**ROBINS v. SANDFORD et al.    (No. 11860.)**

Court of Civil Appeals of Texas.    Fort Worth.
Oct. 29, 1927.

Rehearing Denied Nov. 26, 1927.

**1. Judgment ⬀485—Judgment of domestic court having jurisdiction cannot be collaterally attacked, unless void on its face.**

The judgment of a domestic court on a matter within its jurisdiction cannot be collaterally attacked, unless the record itself by its recitations shows the judgment to be void.

**2. Judgment ⬀470—Legal presumptions are in favor of judicial acts performed by public officer within scope of powers conferred on him by law.**

The legal presumptions are in favor of judicial acts performed by public officer within general scope of powers conferred on him by law, and, in assuming to exercise such power, his judgment as to existence of circumstances conferring power on him to act is conclusive until set aside in a legal way in a proper proceeding.

**3. Receivers ⬀59—Evidence in collateral suit, tending to controvert recitations in order appointing receiver, held properly excluded (Rev. St. 1925, art. 2293).**

Where order appointing receiver of property of association recited that petition in action had been filed, *held*, that, under Rev. St. 1925, art. 2293, even though filing of petition was prerequisite to validity of order of appointment, evidence offered by trustee of association in action against receiver and others in another court tending to show that petition had not been filed, thus constituting a collateral attack, was properly excluded.

**4. Courts ⬀478—Trustee of association for which receiver was appointed cannot recover for alleged negligence of receiver in action in court other than where receivership suit is pending.**

Where trustee of association for which receiver had been appointed was one of defendants in pending receivership suit, and did not move to vacate receivership, or complain of misfeasance of receiver, *held*, that he could not, in an action against receiver and others in another court, recover for alleged negligence of receiver, since court of receivership proceeding is proper tribunal.

On Motion for Rehearing.

**5. Receivers ⬀59—Fraudulent order appointing receiver cannot be set aside by court of coordinate jurisdiction in collateral action (Rev. St. 1925, art. 1995, subd. 17).**

Even though order of court appointing receiver was fraudulent, in that petition in action had not been filed, as stated in order, in view of Rev. St. 1925, art. 1995, subd. 17, such order must be set aside in court where entered or on appeal or by proceeding in nature of new suit, and could not be set aside in another court of co-ordinate jurisdiction in a collateral action.

Appeal from District Court, Tarrant County; Bruce Young, Judge.

Action by J. W. Robins, trustee, against W. G. Sandford and others. From judgment dismissing suit, plaintiff appeals. Affirmed.

John J. Hiner and M. L. Swartzberg, both of Fort Worth, for appellant.

Thompson & Barwise, L. J. Wardlaw, and Lipscomb & Seideman, all of Fort Worth, and Albert B. Hall, of Dallas, for appellees.

CONNER, C. J.    This suit was instituted by J. W. Robins, as trustee of the Owenwood pool No. 3, a trust estate, against W. G. Sandford, the Continental National Bank of Fort Worth, the Marfa State Bank of Marfa, and the Fidelity & Deposit Company of Maryland. J. W. Robins sued for the benefit of his trust association, and his complaint is set forth in a petition containing two counts. In the first count, it is alleged, in substance, that defendant W. G. Sandford, on the 13th day of May, 1926, by an order signed on that day and made in vacation without notice to the plaintiff by Hon. C. R. Sutton, judge of the Eighty-Third judicial district of Texas, was appointed receiver of all the properties of Owenwood pool No. 3 situated in Texas. It was alleged that the order appointing the receiver had been made in a suit purporting to have been theretofore filed by one C. B. Tandy against the plaintiff, Robins, and other as defendants, in the district court of Upton county, Tex., but which in fact had not been instituted until the day after the appointment. A copy of the order was attached as Exhibit A, and made a part of the petition. The order of appointment was as follows:

"In the District Court of Upton County, Texas, Eighty-Third Judicial District.

"C. B. Tandy v. Owen A. Wood et al.    No. 83.

"The petition filed herein, and praying, among other things, for the appointment of a receiver, having been presented to me, in chambers, on this, the 13th day of May, 1926, it is ordered, adjudged, and decreed that W. G. Sandford, of Fort Worth, Tarrant county, Tex., be, and he hereby is, appointed receiver of all of the assets and properties described in said petition, and of all other assets and properties belonging to, or standing in the name of, Owenwood pool No. 3, or in the name of J. W. Robins, trustee for Owenwood pool No. 3, or in the name of Owen A. Wood, trustee for Owenwood pool No. 3, and situate in the state of Texas, and of all other properties situate in the state of Texas, and belonging to the said Owenwood pool No. 3, or to the owners of interest or units therein and situate in said state; and, in addition to the powers conferred upon the receiver by statute, said receiver is now and here expressly authorized, empowered, and directed to take immediate possession and control of, and operate and manage all of, said properties.    And I hereby fix the bond of the said W. G. Sandford, receiver, at the sum of $100,000, the same to be conditioned as required by law; this appointment

⬀For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

to take effect upon the execution and approval of said bond and the filing herein by said receiver of the statutory oath. C. R. Sutton, Judge, District Court, Upton County, Texas, 83d Judicial District."

It was charged that the defendant Sandford, on the day following the date of the order, qualified as such receiver by giving bond and taking the oath required, and thereupon immediately took possession of all of the properties of the association situated in Texas, which included $152,269.39 in cash, but of which amount, by the consent of plaintiff, $10,930.19 was paid out in liquidation of outstanding checks and obligations due· from said fund, leaving in the hands of Sandford the sum of $141,618.11; that said Sandford also took possession of certain oil-producing land described in the petition, and was appropriating the proceeds thereof; that of the moneys received he had placed in a special account in the Continental National Bank of Fort Worth, in his name as receiver, $141,-618.11; that of the moneys deposited with the Continental National Bank some $50,000 had been withdrawn and deposited with the Marfa State Bank of Marfa, Tex.; that said banks were to pay 3 per cent. interest on such deposits. Plaintiff therefore prayed to recover all sums of money that had been so deposited, with the 3 per cent. interest thereon, and all lands and properties that had. been taken into the possession of Sandford, praying for judgment against the said Sandford and his surety on his receiver's bond, to wit, the Fidelity & Deposit Company of Maryland.

In the plaintiff's second count it was, alleged, in substance, that, among other surveys of land taken into the possession of Sandford as receiver, was one of 160 acres located in Upton ⸍county, then under lease by the association for the purpose of developing the oil therein contained; that the lease at the time it was taken into Sandford's possession was of the reasonable cash value of $80,000, and that Sandford, by a negligent failure to pay the rentals due by the terms of the lease, had permitted the lease to lapse, and thereby become wholly lost to the association, and he prayed for judgment against Sandford and his surety, the Fidelity & Deposit Company of Maryland, in the sum of $80,000, with 6 per cent. interest from the date of the loss of the lease.

The defendants appeared and presented general and special demurrers to the petition, which the court sustained, and, plaintiff having declined to amend, judgment was rendered for the defendants, dismissing the suit, from which judgment the plaintiff has appealed.

[1] In the court below the plaintiff admitted in open court that the first count of his petition was predicated upon his allegations to the effect that, at the time of the court's order appointing Sandford receiver on the 13th day of May, 1916, no suit in fact was pending in the district court of Upton county, it being charged that the application and petition for the receiver had not in fact been filed with the clerk of the district court of Upton county until the next day, to wit, the 14th day of May, 1926. By proper pleas the defendants urged that this constituted a collateral attack upon the order of court appointing the receiver, and that therefore plaintiff's suit should be abated, and plaintiff be required to seek relief, if he so desired, in the district court of Upton county, where the receivership was pending, and the court's ruling sustained this view. We think the court ruled properly on the question. Under our statute (article 2293, Rev. Statutes of 1925), the authority of a judge of a court having jurisdiction of the subject-matter to appoint a receiver in a proper case and in a pending suit cannot be, and is not, questioned. Appellant's contention is that in the present instance there was no suit pending in Upton county at the time of the appointment under consideration, and that therefore the order of appointment· is a nullity, and hence that the proceedings may be attacked collaterally. That the attack in the present suit is a collateral one cannot be questioned. That the judgment of a domestic court upon a matter within its jurisdiction cannot be attacked collaterally, unless the record itself by its recitations shows the judgment to ʼbe void, seems so well established that no citation of authority is necessary. We will, however, quote from a few cases to illustrate the doctrine. In the case of Levy v. Roper, 113 Tex. 356, 256 S. W. 251, it is said:

"The necessity for maintaining rights acquired on the faith of apparently valid judgments of domestic courts of general jurisdiction has led to the rule, now firmly established in Texas, that whenever such judgments are collaterally assailed their jurisdictional recitals are not open to attack but import absolute verity."

Judge Denman, of our Supreme Court, in the case of Crawford v. McDonald, 88 Tex. 632, 33 S. W. 328, said:

"Where a personal judgment has been rendered against a defendant by a domestic court of general jurisdiction, and under the same his property has been seized and sold, he will not, in a contest over the title to the property, be allowed to show by evidence dehors ·the record that the judgment was rendered without any service whatever upon him. Logically the judgment is in fact void, but on grounds of public policy the courts, in order to protect the property rights, apply the rule aforesaid, which precludes inquiry into facts dehors the record for the purpose of showing the invalidity of the judgment; and therefore for all practical purposes, in such collateral attack, the judgment is held valid."

In the case of Cleveland v. Ward, 285 S. W. 1063, Chief Justice Cureton, speaking for

the Supreme Court on judgments void for want of service, said:

"Such judgments against the parties not served are void, and yet, because of recitals in the judgments, they cannot be collaterally attacked. Levy v. Roper, 113 Tex. 356, 361, 256 S. W. 251."

In the case of Martin v. Burns, 80 Tex. 676, 16 S. W. 1072, it is said:

"Where the case is within the jurisdiction of the court and no fact appears affirmatively in the record sufficient to defeat the jurisdiction, evidence aliunde, even where the judgment is silent as to the process or its service, will not be heard to contradict the presumption of regularity or to establish a fact outside of the records for the purpose of showing that jurisdiction over the former did not in fact attach and thus impeach the judgment, if the judgment itself finds and recites a valid notice or citation and service that controls the balance of the record, otherwise if it recites an invalid citation, or names the precise character thereof. If the judgment is silent, then the whole process in the record may be examined. This is as far as the courts can go when the proceeding is collateral. These rules of decision are too well established in this state to need any further discussion."

So, too, in the case of Brown v. Clippinger, 113 Tex. 364, 256 S. W. 254, in an opinion by Justice Greenwood, it is held that, quoting from the headnote:

"Judgment which recites facts sustaining the court's jurisdiction rendering the same is not subject to a collateral attack."

Many other decisions of like tenor and effect might be cited, but, as stated, we think it unnecessary to go further. We wish to emphasize the concluding portion of the opinion of Martin v. Burns, supra, where it declares that:

"If the judgment itself finds and recites a valid notice or citation and service, that controls the balance of the record."

[2] The authorities cited clearly indicate that the legal presumptions are in favor of the judicial acts performed by a public officer within the general scope of the powers conferred upon him by law, and in assuming to exercise such a power the issue of whether the circumstances exist which confer upon him the power or jurisdiction to act is necessarily involved, and his judgment on this issue is conclusive until set aside in a legal way in a proper proceeding.

[3] It will be observed that the order appointing the defendant Sandford receiver of the property of the Owenwood pool No. 3 sets forth the style of the case in which the order is made as that of C. B. Tandy v. Owen A. Wood et al., No. 83, in the district court of Upton county, Tex., Eighty-Third judicial district of Texas; and recites that the "petition (manifestly the petition in which the application for the receiver was

made) filed herein and praying, among other things, for the appointment of a receiver having been presented to me, in chambers, on this the 13th day of May, 1926, it is ordered, adjudged, and decreed that W. G. Sandford, of Fort Worth, Tarrant county, Tex., be and he hereby is appointed receiver of all of the assets and properties described in said petition," etc. These recitations clearly imply the fact now assailed that the petition, at the time of the application, and at the time the court made his order, had been filed in the case of C. B. Tandy v. Owen A. Wood et al., in the district court of Upton county, Tex. This being true, as we think it is, it follows, in accordance with the decisions from which we have quoted, that neither allegation nor proof was available to appellant to show, as he attempted to do, that the petition in the case of Tandy v. Owen A. Wood et al., No. 83, had in fact not been filed until the following day, to wit, May 14, 1926. Appellant sought to show by the certificate of the district clerk of Upton county that the petition in cause No. 83 had not been filed until May 14th; that a citation and copy of the petition issued to be served upon a nonresident defendant in that case recited that the petition had been filed on May 14th rather than on May 13th. Appellant also offered oral testimony of witnesses tending to show the same fact.

Appellant cites the case of Amason v. Harrigan, 288 S. W. 566, by the San Antonio Court of Civil Appeals, which holds that an order appointing a receiver on the day before the original petition in the suit was filed was void; there being no suit pending to support the appointment. But the order in that case, which is set out in the opinion, merely recites that the application came on to be heard on the 9th day of September, 1926, and wholly fails to contain a recitation, either direct or implied, that a suit was pending at the time of the order, and the court found, without setting out the evidence upon which the finding rested, that the original petition in the case had not been filed in the court below until September 10th. In aid of the conclusion, we must presume, if necessary, that the finding was predicated upon evidences disclosed by the record as a whole. We have not been able to find where that case has been before our Supreme Court, or otherwise reviewed, and it seems to have been held in the case of Scott v. Cobb, 30 Tex. Civ. App. 190, 70 S. W. 802, by the Dallas Court of Civil Appeals, that the appointment of a receiver without notice, and before filing of a petition, was not ground for reversing the judgment; no motion to vacate the receivership having been made.

If it be assumed, however, for the purposes of argument, that the filing of the petition in the suit was a prerequisite to the validity of the order of appointment, we nevertheless

think, in view of the recitations in the order of appointment in the case before us, that the court properly ruled in sustaining the demurrers of defendants and in excluding the evidences referred to, and offered by, appellant.

[4] We further conclude that the court properly sustained objections to the second count in appellant's petition seeking to recover from the receiver, a judgment based upon allegations that the receiver had been negligent whereby the Owenwood pool No. 3 had lost the alleged value of the lease referred to. It appears from the petition that the receivership suit in the district court of Upton county, in which the appellant is one of the defendants, is yet pending, and it does not appear that any motion to vacate the receivership or any complaint in that court of misfeasance or malfeasance on the part of the receiver has been made, and we think that the district court of Upton county is the tribunal in which the appellant must seek the relief desired.

It is said in 23 R. C. L. p. 66, that all authorities sustain the proposition that, when a court of equity acquires jurisdiction of a cause, and appoints a receiver to take charge of the property involved, then no other court of co-ordinate jurisdiction has any power or authority to interfere or meddle with the property in the hands of the receiver, but must leave the court appointing the receiver untrammeled in its administration of the same, as the law directs. This rule is essential to the orderly administration of justice, and to prevent unseemly conflicts between courts whose jurisdiction embraces the same subjects and persons, and has no reference to the supremacy of one tribunal over the other, nor to the superiority in rank of the respecting claims, in behalf of which the conflicting jurisdictions are invoked.

In the case of Russell v. Texas & P. Ry. Co., 68 Tex. 646, 5 S. W. 686, it is said, quoting from the headnote:

"The property [involved in the receivership proceedings] is in the custody of a court through its receiver."

In the case of Ellis v. Water Co., 86 Tex. 109, 23 S. W. 858, it was held that, after property has been placed in the hands of a receiver, it is not subject to levy and sale under execution. See, also, Mudge v. Hughes (Tex. Civ. App.) 212 S. W. 819, and cases therein cited.

In the case before us, appellant sues, not in his individual right, but as trustee and for the benefit of the Owenwood pool No. 3, and any judgment that he might recover against the receiver Sandford and the surety on his bond would constitute an asset of which the receiver in the Upton county suit would be entitled to possession and control under the orders of the district court appointing him. If, indeed, as alleged, the receiver Sandford has been guilty of negligence and consequent losses to the association for which appellant is a trustee, the district court of Upton county will doubtless, upon the proper application, give the proper relief. Upon a proper showing, that court would have power to remove the present receiver and appoint another with direction or authority to sue the present receiver and his surety to recover any and all sums that may be due the estate administered. These are mere suggestions made on the assumption that the receivership in Upton county may be vacated and set aside on the grounds alleged in the first count of appellant's petition, in which event he could sue in any court having jurisdiction over the defendant Sandford and his bondsmen.

For the reasons indicated, we conclude that the judgment below should in all things be affirmed.

## On Motion for Rehearing.

[5] The able counsel representing the appellant in this case presents an insistent and perhaps plausible motion for rehearing, in which, among other things, he stresses the effect of evidence offered on the trial below not referred to in our opinion. As to this additional matter, which is presented in the eighth paragraph of the motion for rehearing, and as to which we are requested to find additional conclusions, we feel that we must say that, while it is true, as alleged, that appellant offered to prove by Mr. Wardlaw, one of the counsel in behalf of appellees, who presented the petition for the appointment of a receiver to the judge who granted it, that he (Wardlaw) prepared the order of court appointing the receiver, and that he then knew, as did also the defendant Sandford and Judge Sutton who filed the order, that the petition for the appointment had not been filed in the district court of Upton county, we find no specific allegation in appellant's original or supplemental petition that supports such proof. But, if it be assumed that the pleadings are broad enough to support the offered testimony, it would only tend to show that the judge acted fraudulently, and hence that the order was in fraud of the court's jurisdiction. That Judge Sutton had under our statute the general jurisdiction to appoint a receiver we think cannot be doubted, nor can it be doubted that the order of appointment refutes the existence of the fact relied upon as showing a want of jurisdiction. If, therefore, it be admitted that Mr. Wardlaw's testimony is true, and that it must be accepted by us as established, it would not in our judgment authorize the district court of Tarrant county in the suit before us to set aside the order of appointment under consideration.

A domestic judgment that is merely fraud-

ulent must be set aside in the court where entered, or on appeal, or by proceedings in the nature of a new suit, and not in a separate court having co-ordinate jurisdiction only. Murchison v. White, 54 Tex. 78; Fleming v. Seeligson & Ellis, 57 Tex. 527; Texas-Pacific Coal & Oil Co. v. Ames (Tex. Com. App.) 292 S. W. 191. As opposing this view, appellant cites the cases of Morgan v. Morgan, 1 Tex. Civ. App. 315, 21 S. W. 154; Babcock v. Marshall, 21 Tex. Civ. App. 145, 50 S. W. 728; and Chunn v. Gray, 51 Tex. 112. The case first cited was a decree of divorce rendered in another state or territory, and it was held that such judgment could be collaterally attacked by showing that the court which granted it was without jurisdiction, where neither of the parties resided in the state granting it. The second case (Babcock v. Morgan) was one in which the plaintiff in the suit declared upon a money judgment against the defendant. The defendant in answer pleaded that the judgment was procured against him in another state by the fraudulent conduct of the plaintiff, in that after suit was brought in the court of foreign jurisdiction, and before judgment was obtained, the plaintiff and defendant had agreed upon a full settlement of the matters then in litigation, in consideration of which the plaintiff had agreed to dismiss the suit, and not prosecute it to judgment. The answer of defendant was upheld by our Austin Court of Civil Appeals. The case of Chunn v. Gray, which was by our Supreme Court, also involved the construction of a judgment of another state, and it was therein held that the record of such a judgment may be contradicted as to the facts necessary to give the court jurisdiction, notwithstanding it may be recited therein that they exist, and that, if it be shown in such suit that in fact jurisdiction did not attach, the judgment-is a nullity. In all of these cases it was insisted that, under section 1 of article 4 of the Constitution of the United States, full faith and credit should have been given to the judgment attacked. Our Supreme Court, however, has this to say:

"In some, it is contended that judgments of sister states, like domestic judgments, should have 'uncontrollable verity,' which admits of no plea or proof to the contrary'; and in others, that as to the question of jurisdiction, from 'necessity rather than reason,' they should be open to inquiry. Freem. on Judg. §§ 559–566.

"The Supreme Court of the United States, to which the final determination of such cases appropriately belongs, and its decision of which should have peculiar weight and binding authority, in the elaborate case of Thompson v. Whitman, 18 Wall. 457 [21 L. Ed. 897], reviews many cases upon this question, and announces the conclusion, that neither the constitutional provision nor the act of Congress prevents such inquiry into the jurisdiction of the court of another state, and that the record of such judgment may be contradicted as to the facts necessary to give the court jurisdiction, notwithstanding it may be recited therein that they did exist; and if it be shown that in fact such jurisdiction did not attach, the judgment is a nullity.

"The previous decisions of this court sustain the same view. Norwood v. Cobb, 15 Tex. 500; Norwood v. Cobb, 24 Tex. 551."

The cases referred to, being, as shown, judgments of foreign jurisdiction, cannot be controlling in the case before us. Here we have an order or judgment of a judge of this state having general jurisdiction which refutes the facts now pleaded as showing a want of jurisdiction on the ground of fraud.

Nor do we think it can be said, as insisted, that the attack upon the judgment under consideration is direct and not collateral. We find the following in a note to the definition of the term "collateral" given in Black's Law Dictionary (2d Ed.) p. 214, to wit:

"A collateral impeachment of a judgment or decree is an attempt made to destroy or evade its effect as an estoppel, by reopening the merits of the cause or by showing reasons why the judgment should not have been rendered or should not have a conclusive effect, in a collateral proceeding, i. e., in any action other than that in which the judgment was rendered; for, if this be done upon appeal, error, or certiorari, the impeachment is direct. Burke v. Loan Ass'n, 25 Mont. 315, 64 P. 881, 87 Am. St. Rep. 416; Crawford v. McDonald, 88 Tex. 626, 33 S. W. 325; Morrill v. Morrill, 20 Or. 96, 25 P. 362, 11 L. R. A. 155, 23 Am. St. Rep. 95; Harman v. Moore, 112 Ind. 221, 13 N. E. 718; Schneider v. Sellers, 25 Tex. Civ. App. 226, 61 S. W. 541; Bitzer v. Mercke, 111 Ky. 299, 63 S. W. 771."

The case of Maddox v. Summerlin, 92 Tex. 483, 49 S. W. 1033, 50 S. W. 567, was a suit to subject property to the payment of a judgment. A plea that plaintiff was precluded by previous judgments of another court holding that property not liable was made by supplemental petition, alleging the invalidity of the judgment so pleaded because obtained by false swearing. It was held that the attack was collateral, and the judgment could not be so impeached. Judge Brown, who wrote the opinion, said:

"It is contended in this court that the district court erred in sustaining exceptions to the supplemental petition setting up the invalidity of the judgments alleged to have been procured by false swearing. This is to be deemed a collateral attack upon those judgments, since it does not appear that either of them was rendered in the court in which this suit was pending, and although they may have been procured by fraud, it is the policy of the law not to permit judgments to be attacked in such a proceeding as this upon that ground. Black on Judg. § 296; Van Fleet's Col. Attack, § 550; Dilling v. Murray, 6 Ind. 324 [63 Am. Dec. 385]; Buchanan v. Bilger, 64 Tex. 589; Fleming v. Seeligson, 57 Tex. 531; Crawford v. McDonald, 88 Tex. 626 [33 S. W. 328]; Clayton v. Hurt, 88 Tex. 595 [32 S. W. 876]; Williams v. Haynes, 77 Tex. 283 [13 S. W. 1029, 19 Am. St. Rep. 752]."

These holdings, we think, are in accord with the legislative policy indicated by article 1995, Rev. Statutes of 1925, subd. 17, which requires that a suit to set aside a judgment must be brought in the court in which the judgment was rendered. We think it will be found that the cases in which it has been held that a judgment may be set aside on the ground of fraud, and that such suits constitute a direct attack thereon, are cases instituted in the court in which the judgment was rendered.

Other questions presented in the motion for rehearing are sufficiently disposed of in our original opinion, and the motions for rehearing and for additional conclusions other than as above appears are overruled.